May it please the Court, my name is Kim Donaldson-Smith, and I represent the plaintiff appellants Ms. Jillian York and Ms. Jody Bailey, and I would like to please reserve five minutes for rebuttal. We started at a fundamental point in our appeal, and that is the District Court's dismissal of certain claims at the motion to dismiss stage. And we find that there was significant error with the dismissal of those claims because they fly in the face of the plain express language of the ACA. We didn't ask the District Court to interpret the ACA, yet the District Court did in dismissing certain of our claims. So we think that it is critical to start with the plain language of the ACA at this point. The ACA states that a group health plan and health insurance issuer offering group or individual health insurance coverage shall, at a minimum, provide coverage for and shall not impose any cost sharing requirements for the enumerated preventive services. In addition, the Tri-Departments, the Treasury, HHS, and the Department of Labor were charged with implementing and issuing regulations and rules with respect to the ACA's preventive services mandate. Does the fact that it's three agencies matter affect the legal issue of agency guidance and even regulations that go beyond the statute are not valid? No, I don't think that the... Or does it affect the Skidmore versus Chevron issue? I don't think so. I agree, Your Honor, that I don't think whether it's one agency... You talk about the trinity of agencies as though that makes it, that's somehow a constitutional blessing or separation of powers blessing. I don't think so. No, Your Honor, it's not. The import, whether it's one agency or three agencies, the import is the same. The import is that, first, we start with the plain language that the ACA requires coverage, and second, we have the Tri-Departments who were charged by Congress to issue these regulations and rules, and their 2010 interim final rules expressly state that the reasons for the ACA's preventive service mandate was so that access and utilization of the services would increase and to address the underutilization of preventive services. At the motion to dismiss stage, the court found that certain of plaintiff's allegations were not supported by the text of the ACA, and we respectfully disagree with that. In this regard, the district court's order specifically stated that the plaintiffs do not identify and the court is not aware of any ACA provision addressing misleading and wrong guidance or, quote, administrative barriers, and that was in the order of Joint Appendix 448. The district court motion to dismiss also states the text of the ACA requires insurers to make available comprehensive lactation benefits without cost sharing. Again, that's at JA 448. Those are not accurate. Those are fundamentally incorrect statements of what the ACA itself states. We were not asking the court to read any procedural requirements into the ACA, and the result that we got was the district court reading out of the ACA the term coverage, and the district court did that which this court in Lindquist held was improper. Under Lindquist, this court stated that the express language of the statute must be followed. The express language here is the word coverage. In addition, in Lindquist, this court also said that even if there is an express legislative history or that Congress didn't foresee a potential fact situation or consider the question, the court cannot draw a negative inference of congressional intent, and the court in Lindquist held that to do so would be- I remember from our many insurance coverage cases the proposition of the insurer's policy and policy manuals don't adequately explain to me the coverage I'm buying. That's a freestanding violation of the insurer's obligation. State law doesn't have to explain the meaning of everything that's in its comprehensive general liability policy or its homeowner's policy, does it? I may contend, depending on the issue, it may have to adequately describe that. But what we're asking for here, Your Honor, is the same fundamental coverage that one would receive for any type of service, preventive or not. I don't understand how-well, the facts of this case, it seems to me coverage was provided, but there were difficulties in communication, leaving aside who's a network and what's so forth. But just whether these two plaintiffs were afforded the lactation coverage, it seems to me they were, and it was subject to communications difficulties, and one of the plaintiffs deciding after she had been advised to get the tongue-tied problem handled, you know, we don't do that, so to speak, which is no challenge. And then she carried on from there to go to the follow-up counselor, presumably recommended by the tongue-tied surgeon, and now suddenly she's been denied coverage. I don't understand what administrative barrier has denied coverage. I don't get the link. Because each plaintiff, Ms. Bailey and Ms. York, reached out to Wellmark to have Wellmark identify how they could utilize their coverage through using in-network providers of lactation consultants. How new was the ACA at the time? Less than a year, right? No, Your Honor. So the ACA was enacted in 2010 and the preventive services requirements, but the preventive services requirements were put into place as of August of 2012. So it was over two years after that. These events happened in late 2015 and 2016. I just don't see how missed phone calls and so forth produce a denial of coverage. Certainly, Your Honor. It's more than missed phone calls, however. It's first you have insurers going or told by Wellmark expressly, as we all are for any type of service, go online and find a provider who is in-network. They attempted to do that. Wellmark has never contested. But this is not a class action appeal. This is two specific plaintiffs with two specific situations. It's being argued like an injunctive class action. Respectfully, Your Honor, I don't believe it is because this is the experience of each one, the two plaintiffs, Ms. York and Ms. Bailey. They went to Wellmark specifically to get the information of who they should use for their in-network provider to provide lactation consultations so it would be covered as an in-network service. Wellmark didn't give Plaintiff Bailey or Plaintiff York that information. They couldn't get it on the online provider finder tool because Wellmark didn't have the ability to find it there. We can go on and search for an obstetrician, a gynecologist, a general practitioner provider. But they both knew who the providers were. They did not know who the in-network providers were. Forget in-network. They knew who the lactation providers were. Respectfully, Your Honor, the important piece is whether or not those providers were in-network. That's the argument that ACA mandates a specialty that's not otherwise licensed or recognized as a health care specialty has to be segregated out and put into all of your online and other information in order to comply with your view of the ACA. Respectfully, Your Honor, I don't agree with that position and characterization of what our argument is. The ACA, whether Wellmark likes the ACA or not, the ACA was put into place to protect not only the insureds, but also specifically for the preventive services mandate to take a look at cost savings, cost savings for companies, cost savings for individuals. I understand all that, but that's not whether their provider network, their provider helpline has to somehow create new specialties that are not otherwise recognized in the community or the state because of this mandate. If they convey who we have in our system that provides comprehensive lactation services, I don't care how they convey it. I don't care if they put those four providers in a separate office and put a notice on the door saying we are a new subspecialty because ACA wanted us to do it this way. Certainly. That's not what the statute mandates. Respectfully, Your Honor, it's not a new subspecialty created by the ACA. It's been a longstanding service provider, lactation consultants. It has only been recognized by the ACA in terms of a preventive service that should be covered so that health benefits and cost savings are then promoted and recognized. Does it matter that those services aren't required to be licensed in Iowa? No, it doesn't, Your Honor. There is not a requirement that in order for the service to be covered by insurance,  That is not a requirement. Wellmark has never contended. It goes beyond just these two individuals reaching out to Wellmark. They reached out to Wellmark. They couldn't find it online. They couldn't find it when they talked to the customer service representatives. We included transcripts of the customer service calls where these women specifically said, Who can I go to in network? And they said, We can't find anyone. We can't find that person for you. We can't identify that person for you, Ms. Bailey and Ms. York. Are there claims processing procedures for pursuing one's rights under the coverage? With respect to Ms. York, she submitted her claim. Her claim was denied. She appealed that claim, and it was denied. And that's why we say Wellmark's policy was they were not covering out-of-network lactation services because they took the view that they had possibly individuals in network who would cover those. They never did a survey. They never internally, putting aside if they had to externally reveal to their insureds who their network providers were, they never knew internally who was providing it. They took a leap of faith that there were hospitals in the area of all of their insureds that would have lactation consultants that would provide the services postpartum, which is what is required by the ACA, and be available as a sufficient number on a sufficient basis to meet the needs of their plan participants. Took that all at face value. And what stemmed then from the district court's order on the motion to dismiss, knocking out our theories or arguments or whatever you want to call them about administrative barriers and information, is that we were blocked from getting any type of discovery as to Wellmark's fundamental policy with respect to lactation coverage. Is the word network in the statute? No, it's not, Your Honor. It's just coverage for the services. I guess it's in the regs. Is it defined in the regs? Do these three omniscient agencies purport to define a word network, which is prevalent in the health care insurance industry? No, not that I'm aware of specific to this provision, but the ACA itself refers to coverage. But you're saying that what the Iowa hospitals had was not a network. I don't think Wellmark considers the four lactation consultants at best to be a network. They don't have to. Why does network have to be anything other than a sufficient number of professionals that we employ or engage to perform the services that ACA requires? That could be the standard. That's not what Wellmark did. Wellmark didn't ensure that it had a single in-network provider, yet it kept denying the under-network claims. That's a made-up. Maybe three agencies made it up. But we all know those of us who have health care insurance and maybe have a dentist who's not an in-network provider know the distinction. I know it for that reason, but I certainly can't define the way each individual insured that chooses to have a group of preferred providers that it calls a network. That does not, for me, create a legal definition of, quote, in-network. Well, as I understand, your position is if they were in-network, there wouldn't be a co-pay, in essence, for That's correct, Your Honor. So under the ACA, if the individuals access any preventive service and specifically lactation services in-network, then there is no co-pay, no deductible, no co-insurance. Like our annual visits, my annual visit, I don't pay a co-pay or service because it's preventive. They got the services outside, quote, outside-network and had to pay the co-pay. Yes, correct, Your Honor. So after they made the efforts to try to get coverage by Wellmark, they went to pay. So is your claim basically that they owe us for what we had to pay? My time's about to run out, Your Honor. May I continue? You can answer the question. No, it's beyond that. It's that these two individual plaintiffs are insured and continue to be insured under a plan and plans administered by Wellmark that does not comply with the ACA. They want the policy to be enjoined. They want claims that were reprocessed under the wrong policy to be reprocessed. And going forward, they want to make sure that they're insured under a plan, that if they need to access lactation services, it's done properly and in the plan. Any administrative remedy options other than the litigation you've undertaken? Your Honor, not that we're aware of, no. Thank you. Thank you, Your Honors. We've questioned you pretty thoroughly. We'll give you a minute in rebuttal. I appreciate that, Your Honor. Mr. Hanson, or excuse me, Ms. Hanson. Ms. Hanson. Good morning, Your Honors. My name is Rebecca Hanson, and I represent Wellmark in this matter. The issue at summary judgment in this case was whether Wellmark satisfied its duties under the Affordable Care Act with respect to these two plaintiffs. The district court correctly found that the undisputed facts demonstrated that Wellmark did satisfy its obligations to provide coverage for lactation services to these plaintiffs. Specifically, the court focused on the fact that Wellmark had lactation providers in its network that these plaintiffs not only found but used on several occasions. The district court correctly held that under the Affordable Care Act's regulations, that Wellmark could then in turn deny coverage for the out-of-network care that they received. In fact, plaintiffs used network services from the University of Iowa Hospitals and Clinics on several occasions. Plaintiff York and Plaintiff Bailey both had prenatal lactation counseling from Deborah Hubbard, an internationally board-certified lactation consultant who works at the University of Iowa Hospitals and Clinics. Plaintiff York actually had lactation counseling with her two older children at the University of Iowa Hospitals and Clinics, and again with the child at issue in the complaint. She saw Mary Johnson, and this is postpartum now, she saw Mary Johnson, an internationally board-certified lactation consultant, on staff at the University of Iowa Hospitals before and after seeking out-of-network services. On the call that you talked about with Ms. Donaldson-Smith, Plaintiff York told the representative that she had been at the University of Iowa Hospital and received services there, and that she was not charged for those services. Remind me how all these facts get in a 12B6 record? Your Honor, we also have a summary judgment motion at issue. I was focused on that. Does it matter whether some of these facts are borrowed to rule on the motion to dismiss appeal, even though they didn't come out until the summary judgment proceeding? No, Your Honor, because the district court at the motion to dismiss stage was saying that, found that the plaintiff's theory that Walmart had imposed administrative barriers was not a plausible theory under the Affordable Care Act, because the language of the Affordable Care Act does not talk about administrative barriers. So these facts do not bear on that decision. They do bear on the summary judgment decision, however, because what the court allowed to be the issue at summary judgment was whether or not Walmart had provided coverage to these plaintiffs. And they did. They found network services easily. They found two internationally board-certified lactation consultants at the University of Iowa Hospital, and they utilized those services. Did Walmart pay them? Your Honor, the hospital does not charge for those services. So there was no payment to be made. But they're still an in-network provider. They're Walmart's in-network provider, and so they satisfy Walmart's obligation under the Affordable Care Act. So when these claimants call, why can't Walmart say, here are your two providers at the University of Iowa? Well, Your Honor, the only call that occurred pre-service was Ms. York's call. And like I said, before she even talked about, well, who provides the service in your network, she had already told the customer service representative that she had been at the University of Iowa Hospital. So there was no need for the customer service representative to say anything about the University of Iowa Hospital. But even though the plaintiffs found, had access to, and actually utilized these in-network services, the plaintiffs wrongfully claim that Walmart had to do more before it could deny their out-of-network claims. The plaintiffs claim that in order to satisfy the Affordable Care Act, Walmart had to do several things. First, it had to expand its network, even though it already had lactation consultants in its network. And we know that because these plaintiffs found them and utilized them at the University of Iowa Hospital. And the University of Iowa Hospital and clinics have been providing these services for years. But at no charge to Walmart. That's correct, Your Honor. But why should Walmart be found to have violated the Affordable Care Act if its in-network provider decides not to charge at all for the service? Maybe this is too hypothetical, but had they gone back to those same providers and those providers sent a bill to Walmart, would Walmart have paid? Absolutely. Absolutely. And there's a declaration from Thomas Newton in the record, Your Honor, that says exactly that. And I assume if the provider that either or both of them used inpatient and pre-partum had been too busy to schedule post-partum and had said, why don't you go outside our network, they would not have charged the co-pay. Walmart would not. I'm not following, Your Honor. Well, this may go beyond the record, but what Walmart should do under the statute, if it has providers who would do the whole service without charge, period, but those are not available and so the only effective choice for the patient is to go to an out-of-network provider, then the co-pay should not be charged. Well, I think Your Honor was correct in saying that these facts aren't in the record, so we don't know what would have happened in that instance, Your Honor, but Walmart had network providers and these... Well, going back, I was going to ask, where in the record do I go to get Walmart's definition of network? Your Honor, there is no definition of network. Well, it sounds from your back and forth here that they have the same in-network provider that I was describing with my dentist, that they give you a list, and so where is that? Sure. How does the patient get that? Sure, and maybe I misunderstood Your Honor's question. Walmart has a listing of all of its providers. It has on... It can provide, I think, in paper form, online, a listing of all the providers that it has a contract with, has a relationship with, whereby they're going to pay the provider a certain amount. They're going to steer members towards that provider. Does that list include hospital staff? It includes the hospital, the facility, and it includes maybe departments of the hospital. It doesn't necessarily for an unlicensed, or excuse me, a staff member of a facility, not unlicensed, a staff member of a facility, it wouldn't necessarily list that person individually. Does a woman who's, you know, about to have a baby and goes to UIHS or somewhere within the Wellmark universe, does she have access to... Who will provide the lactation counseling services without a copay? So, Your Honor... Is it a 500-page manual or what? Absolutely not. It's super easy. It's exactly what these plaintiffs did. They were having their prenatal care. They were directed to a lactation consultant at the University of Iowa Hospital. They had prenatal lactation counseling. They had lactation counseling in the hospital when they were having their child, and they knew where to go. So before they're in the hospital, how are they directed? Well, Your Honor, they're not... Is that in the record? I mean, is it when you go in the front door or what? I think, I believe it was Plaintiff York said that, or it may have been Bailey, I can't remember which one, but one of these plaintiffs said, I was at my prenatal appointment, and they literally took me to Deborah Hubbard. They said, I want you to know the lactation consultant that we have. They went right from the prenatal appointment. This is not a rocket science situation. Everyone knows that, you know, mom is having prenatal care. Mom is exposed to providers during that prenatal care. Mom has baby in the hospital and is exposed to providers in the hospital, and that those services are brought to them. It's part of a continuum of care that they're a part of. And this process has worked before. It works now. It worked for these two plaintiffs. They found network providers. It's absurd to think that they didn't know how to find the provider. They did it. We know from the record. They had these services several times, not just once, not just twice, several times. And Plaintiff York's plan document, by the way, says that University of Iowa Hospital is a network provider. You get the highest level of benefits if you go to the University of Iowa Hospital. So she either knew or had to have known or should have known that the University of Iowa Hospital was a network provider. And Plaintiff Bailey had her child there. So it's safe to assume that she went back to the University of Iowa Hospital for lactation care because she knew it was a network provider because you wouldn't take on the expense of a childbirth from an out-of-network provider unless for some other random reason. But she went back to the University of Iowa Hospital for this care. And then she went out of network for the only reason was because she was at home. She called for an appointment. She did not have her phone on her several times when Deborah Hubbard called her back. And she got to decide that the phone tag had gone on too long and I'm going to go out of network now. That's a standard that Wellmark can't be held to because Wellmark had the provider. The provider was even calling her back. But she admitted at her deposition that she did not have her phone on her. That's a violation of the Affordable Care Act on behalf of Wellmark? That makes no sense. Moving on to the motion to dismiss, the court read the requirements of the Affordable Care Act to require Wellmark to do two things. Provide coverage and do it without cost sharing. Now coverage is a term of art. It means to provide something within the scope of an insurance plan. It doesn't mean to remove every single conceivable or inconceivable barrier that a member might have to getting the service. The Affordable Care Act's plain language says that the only way that you have to provide that coverage is to do it without cost sharing. And then the regulations go on to define exactly what that means. But there's no requirement for the only barrier here that has to be removed is a financial one. And if you read all of the statements in plaintiff's briefs that come from HHS or the Health Resources and Services Administration, all of those statements that talk about the Affordable Care Act's preventive services provision focus on the removal of cost. And yes, the Affordable Care Act's preventive services provision was meant to increase access and utilization. And it did that by removing cost shares. So that when you go to the doctor, you didn't have to pay $20 and have that be a barrier to you getting preventive care. That's the only barrier that the Affordable Care Act talks about. The plaintiffs asked this court to read into the term coverage more than what is there. They claim that coverage really means access. And that access means removing any and all obstacles that the member has to getting the benefit. But the term access doesn't appear in the Affordable Care Act. And even if it did, the only access that the Affordable Care Act prescribes is financial access, the removal of cost sharing. Because there is no textual... Why doesn't coverage in this context imply all the ERISA procedural regs? Because there are ERISA procedural regs to rely on. Well, but does the statute... I mean, ERISA is talking about claims procedures. This is talking about... I can see where a bureaucrat would make the analogy. Why isn't it a permissible one? Because there is no language indicating that. Coverage means... Have you compared ERISA with this coverage provision? Well, this coverage provision literally only requires... It talks about cost sharing. It's all about cost sharing. ERISA regulations... which satisfies all the... dots all the I's and crosses all the T's in the regs. Well, Your Honor, if Congress intended to pack all of that into the preventive services provision, it knew that those ERISA regulations existed, so it would have referred to them. It knew how to refer to those regulations, and it did not. Congress does this to us all the time. Right, Your Honor, but we're... I'm sure the people drafting the ACA at 1159 at night with a command to get it done by tomorrow thought of all these things. Well, Your Honor, I think this provision was very well thought out, and the thinking behind it was... Conceptually. Conceptually to remove a barrier to getting preventive services. They wanted to increase access, and they did it by removing cost sharing. Let's not pay the $20 when we go to the doctor. Let's go to the doctor and not worry about that. That's all that the preventive services... In the conjunctive, shall at a minimum provide coverage for and shall not impose any cost sharing requirements. So the second half is clearly financial. The first half, as you would concede, is a term of art. It is a term of art, and it simply was that not all insurance plans provided coverage under the terms of their plans for lactation counseling. So the cost sharing part is how to do it, but you have to put the coverage in your benefit plan to begin with. So the idea that you have your plan on August... I think this was enacted on the 12th of August. So on the 11th of August, your plan doesn't say, I have access to preventive services. On August 12th, it does say that. That's coverage. It says, I have an entitlement to coverage for that service. And the only way the Affordable Care Act said that it had to be done was without cost sharing. Thank you, Ms. Hanson. Thank you, Your Honors. Ms. Donaldson-Smith, we'll give you a minute or so to reply to what you've heard. Thank you, Your Honor. I just wanted to make a few points. I was going to make the point that Your Honor made with respect to it's in the conjunctive. It's conjunctive. It's coverage and no cost sharing. In addition, Wellmark concedes that the purpose was to remove financial barriers. Wellmark did not remove financial barriers. Wellmark did not identify the precise providers that they contracted with to whom the insurers could go to so that the financial barrier was removed. And I am arguing on an individual plaintiff level, if we go to the interaction between Ms. York and Wellmark's customer service rep, which is in the record starting around Plaintiff App 127, it shows that she asked, do you provide coverage without cost share for a specific provider? They said, no, we can't find that person. And then she said, okay, let me see. I'm trying to find another lactation consultant. He tried to do that. He looked in his system. What's the remedy? If we affirm on the 12B6 ruling and accept your argument right now on the summary judgment ruling, what's the remedy? I assume we have a trial over whether the $65 was properly claimed for $65 was properly rejected. My time's up, Your Honor. May I respond? Yes. That in part, but also in addition, because of the way that we were constrained by the judge's ruling at the motion to dismiss, throughout the litigation, we respectfully propose that we would be going back to the point where we would have been if the motion to dismiss order had not inappropriately curtailed not only the coverage requirement, but discovery. But you say the two plaintiffs have a right to a trial as to whether the financial barriers were not removed because of the specific way their attempt to obtain the services was handled. That's right. At an individual level, yes, Your Honor. But this is also a class action. If Your Honors do not have any further questions. Thank you very much. Thank you, counsel. Court thanks both counsel for your presence and the arguments you provided to the court, the briefing which you submitted, and we'll take the case under advisement. Clerk, does that conclude the hearing docket for today? Yes, it does, Your Honor.